**CATERPILLAR TRACTOR CO., a California corporation, Appellee,**

v.

**BERCO, S.p.A., etc., Appellant.**

**Appeal No. 83–553.**

United States Court of Appeals, Federal Circuit.

July 25, 1983.

Seymour Rothstein, Chicago, Ill., for appellant. With him on brief were Denis A. Bernstein and Robert C. Ryan, Chicago, Ill., of counsel.

James C. Wood, Chicago, Ill., for appellee. With him on brief was William E. McCracken, Chicago, Ill., of counsel.

Before MARKEY, Chief Judge, and DAVIS and BALDWIN, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the district court for the District of Wyoming, holding claims 1, 10 and 19 infringed. We affirm.

### Background

Caterpillar Tractor Co. (Caterpillar) sued Berco, S.p.A. (Berco), a replacement parts manufacturer, and Wortham Machinery Co.

(Wortham), Berco's distributor, in Wyoming for infringement of Caterpillar's Patent No. 3,841,718 ('718 patent) for an "Augmented Crescent Seal With Compensating Load Ring" issued to Harold L. Reinsma (Reinsma) and assigned to Caterpillar.

After Caterpillar had charged Berco's type I seal as an infringement, Berco, on advice of counsel, began producing a modified seal (type II) in place of the type I.[1]

After a five-day trial, Judge Brimmer held claims 1, 10 and 19 valid and infringed by Berco's type I and type II seals, entering 53 findings and 41 conclusions. Berco had admitted infringement with respect to the type I seal. Judge Brimmer entered a final

judgment, ordered an injunction, and vacated the order to permit an accounting. After Caterpillar waived damages, Judge Brimmer reinstated the final judgment and stayed the injunction pending appeal.

Berco and Wortham do not appeal from the holding of validity, but challenge the finding that Berco's type II seal constitutes an infringement of claims 1, 10, and 19.

*The Invention*

The seal disclosed and claimed in the '718 patent in suit is part of a sealed and lubricated track for crawler type tractors. The seal retains lubricating oil in the track

1. Cross sectional views of the seals are shown below.

Caterpillar

Berco Type I

Berco Type II

joints and keeps dirt and contaminants out, thus enabling lubrication in the field and increasing the useful life of the track. Other seals were tried, but none proved effective in the severe environments in which tractors are used. Before the present invention, Caterpillar could lubricate its track only during initial assembly in the factory, lubrication in the field being impractical because lubricant contamination was likely.

The claimed seal is shown in Figure 3 of the patent:

The claimed seal is comprised of a seal ring 43 having a crescent shaped cross-section, *supra*, note 1, and a load ring 45, shown in their compressed operating states, their free states being shown by the phantom outlines. The ring 43 has a driving flange 47 engaged in non-rotative driving contact with counterbore 35 and a sealing flange 49 engaged at 63 in rotative contact with the end face 31 of a bushing 25. The two flanges are connected by a thin wall section 51 providing a flexible hinge section therebetween. The thin wall section 51 is of minimum thickness to provide maximum flexibility. Because of that flexibility, almost all of the seal face load is derived from the load ring 45.

### Prosecution History

Caterpillar filed U.S. Patent Application Serial No. 116,157 (original application) on February 17, 1971. The examiner rejected all nine claims under 35 U.S.C. § 102 as anticipated by Patent No. 3,390,922 ('922

patent) for a "Track Pin Seal" issued to Reinsma and assigned to Caterpillar. The examiner also rejected claims 2, 6, 7, 8 and 9 under 35 U.S.C. § 112 as indefinite, the examiner saying, "the term 'thin' is meaningless, since no basis for comparison exists in the claims." No definition of "thin" was provided in the specification of original application No. 116,157.

On October 15, 1972, Caterpillar filed continuation-in-part (CIP) application Serial No. 300,817, containing new material defining "thin", and a discussion and drawing (Figure 6) of the '922 patent.

Fig_6_

PRIOR ART

51'

After an examiner's amendment not here relevant, all nineteen claims of the CIP were allowed and the CIP issued on October 14, 1974, as the '718 patent.

### Issue

Whether Judge Brimmer erred in finding that the Berco Type II Seal constituted an infringement of claims 1, 10 and 19.

### OPINION

Review of findings of infringement is limited to a determination of whether those findings can be said to have been clearly erroneous. Fed.R.Civ.P. 52(a).

### Claims 1 and 19

■ Determination of patent infringement requires two steps: the meaning of the claims must be learned from a study of all relevant patent documents; and the claims must be applied to the accused structures. *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 401, 155 USPQ 697, 705 (Ct.Cl.1967).

■ It is undisputed that the language of claims 1 and 19 reads directly on Berco's type II seal, except for the language dealing with the hinge wall section between the driving and sealing flanges. In claim 1, that language is: "a wall section of substantially thinner cross section than that of the flanges ...." In claim 19, the language is: "the wall section being of thin cross-section relative to that of the ends....." It is apparent from that language that claims 1 and 19 specify a hinge wall section having a thinner cross section than do both flanges or both ends. The

hinge of Berco's type II seal is thinner than the sealing flange, but it is not thinner than the driving flange. See note 1, *supra.* Claims 1 and 19 do not, therefore, read on Berco's type II seal, and there is no literal infringement of those claims.

Thus Caterpillar necessarily relies on the doctrine of equivalents, asserting that the type II seal "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). That test is met here, where Berco's type II seal is substantially the same structure and produces substantially the same result in substantially the same way. Nothing of record, for example, establishes that a thinner driving flange affects either the mode of operation or the result obtained by Berco's type II seal.

Berco counters with the doctrine of file history estoppel. "[I]t has long been settled that recourse may not be had to [the doctrine of equivalents] to recapture claims which the patentee has surrendered by amendment." *Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736, 52 USPQ 275, 279 (1942).

The interplay between the doctrines of equivalents and estoppel governs determination of infringement with respect to claims 1 and 19, and is in turn governed by the prosecution history of the '718 patent.

Claims 1 and 19 of the patent were first presented in the CIP. The record may not be complete with respect to all arguments made to the Patent and Trade-

mark Office in the course of the two applications. (A telephone interview was conducted with the examiner, but no summary was recorded.) However, it is clear that Caterpillar did not present a claim defining the hinge section as having a thinner cross section than only one of the flanges and of course could not have cancelled or amended it to secure the patent. See *Nasco Inc. v. Vision-Wrap, Inc.,* 352 F.2d 905, 909 (7th Cir.1965). Nor did Caterpillar enter remarks in the file wrapper to the effect that the hinge section must have a cross section thinner than both of the flanges for the seal to work or for the claims to be patentable over the prior art. Nor would the prior art appear to dictate any such limitation. As above indicated, the rejection of interest was related to § 112, not to prior art. Thus, there is nothing in the file history to estop Caterpillar from relying on the doctrine of equivalents. To limit Caterpillar to a literal reading of the claims would in this case "convert the protection of the patent grant into a hollow and useless thing." *Graver,* 339 U.S. at 607, 70 S.Ct. at 855.[2]

### Claim 10

The language of claim 10 dealing with the hinge wall section reads: "a thin-wall section connecting the flanges and providing a flexible hinge therebetween ...." Unlike claims 1 and 19, claim 10 contains no reference to a relationship with the flanges or ends. Claim 10 in its entirety reads directly on Berco's type II seal and is thus literally infringed.[3]

Berco and Wortham seek to read the limitation of claims 1 and 19 into claim 10, asserting that "thin" must mean thinner than both flanges. However, nothing in

---

**2.** Bona-fide attempts to design a non-infringing product are one of the beneficial results of the incentive-to-disclose system established by the patent statute. The bona fides of such attempts, however, are not governed solely by whether the words of a patent claim can be literally read on the newly-designed product. The matter is not one for semantic antics alone. An infringer appropriates an invention, not words. Hence the doctrine of equivalents. At the same time, the words of a claim may be so limited by the file history or by the prior art as

to define an invention that was not appropriated. Hence the doctrine of estoppel.

**3.** It is possible, of course, for a claim to be literally but not actually infringed, where, for example, a claim may "read on" a structure having no relation to the invention. Instances are rare. See *Westinghouse v. Boyden Power Brake Co.,* 170 U.S. 537, 568, 18 S.Ct. 707, 722, 42 L.Ed. 1136 (1898). In the present case, Berco's type II seal infringes claim 10 literally and substantively.

the record indicates that the examiner allowed claim 10 because of any relationship of thinness between the hinge wall section and the flanges. On the contrary, claim 10 contains language not found in claims 1 and 19. Moreover, claim 10 is substantially the same as claim 2 of the original application with respect to the language describing the "thin-wall section." Because claim 10 was allowed without change in the critical language, it is reasonable to conclude that its allowance was based upon other limitations. Courts may not introduce into a claim limitations which are explicitly contained in other claims. *In re Rousso,* 106 USPQ 108, 110 (CCPA 1955). Thus nothing of record requires that "thin" in claim 10 be read as limited to "thinner than both flanges."

■ Berco and Wortham allege that if "thin" in claim 10 is not read as "thinner than the flanges", then the § 112 rejection of the substantially identical claim 2 of the original application, for failure to define thin, is meaningless. That position ignores the matter added by the CIP to define "thin." The '718 patent specifically describes the center hinge portion as about 0.040 inches thick and states that it should be no more than a maximum of 0.080 inches. Construing as we must, claim 10 in light of the specification, *United States v. Adams,* 383 U.S. 39, 40, 86 S.Ct. 708, 709, 15 L.Ed.2d 572, 148 USPQ 479, 482 (1966), it is clear that the term thin in that claim is not meaningless. Berco's type II seals fall within the range of thinness defined by the patent and identified by "thin" in claim 10. Those seals therefore infringe claim 10.

■ Berco and Wortham cite instructions of Caterpillar's counsel to his foreign associate counsel describing the embodiment at the top of footnote 1, *supra,* and a representation of his German associate to the German patent office distinguishing over certain references, during Caterpillar's prosecution of patent applications on the same invention in Great Britain and Germany. Though no authority is cited for the proposition that instructions to foreign counsel and a representation to foreign patent offices should be considered, and the

varying legal and procedural requirements for obtaining patent protection in foreign countries might render consideration of certain types of representations inappropriate, there is ample such authority in decisions of other courts and when such matters comprise relevant evidence they must be considered. *Stratoflex, Inc. v. Aeroquip Corp.,* Appeal No. 83–587, slip op. at 18 (Fed.Cir. July 25, 1983). The particular instructions and representation here cited indicate that Berco's equivalent embodiment was not contemplated. That does not, however, serve as a basis for denying application of the doctrine of equivalents to claims 1 and 19. Nor could those cited instructions and representation serve as a basis for reading a limitation into claim 10. In the present case, therefore, the cited instructions and representation are insufficient to require a reversal of Judge Brimmer's findings on infringement as clearly erroneous.

### Conclusion

Judge Brimmer did not err in finding that Berco's type II seal substantively infringes claims 1 and 19 under the doctrine of equivalents and literally and substantively infringes claim 10. The judgment appealed from is accordingly affirmed with respect to claims 1, 10, and 19.

*Affirmed.*

DAVIS, Circuit Judge, dissenting in part.

I agree with the court's opinion except for the use of the doctrine of equivalents to find infringement of claims 1 and 19. My position is that Caterpillar is precluded by the course of its prosecution of the '718 patent from claiming anything but literal infringement (with respect to the relative thickness of the hinge and the two flanges) of those two claims—and it is plain there was no literal infringement here.

The prosecution history shows this: The original nine claims of Caterpillar's application were all rejected on the basis of 35 U.S.C. § 102 and also of 35 U.S.C. § 112. Those rejected claims did not embody the "thick-thin-thick" requirement of patent

claims 1 and 19. To avoid the rejection the applicant filed a continuation-in-part application containing new claims 1 and 19—claim 1 setting forth for the first time the language "the driving and sealing flanges being interconnected by a wall section of substantially thinner cross section than that of the flanges," and claim 19 specifying for the first time that the hinge was a "thin cross section relative to that of the ends * * *." In his new application, the patentee expressly pointed out to the Patent and Trademark Office that (1) "the thin flexible hinge section in the seal ring of the present invention provides a substantial distinction over the prior art"[1] and (2) that the hinge portion of the seal was about 0.040 inches thick as contrasted to 0.100 for the driving flange and 0.130 for the sealing flange. All the 19 claims of the new application were then rejected under 35 U.S.C. § 103, but after an unrecorded telephone call (the substance of which is unknown) the Examiner revised the claims (in a now immaterial manner) and the patent issued.

On the basis of the prosecution history, the District Court concluded that "the patent claims were indeed narrowed to overcome objections raised by the Patent Office" and also that Caterpillar "may be estopped from using the term 'thin' as relative to driving and sealing flanges." He decided, however, to apply the doctrine of equivalents. I think this was error for claims 1 and 19, as to which, in my view, the patentee told the PTO in plain effect that those two claims meant exactly what they said—and no more. "A patentee having *argued* a narrow construction for his claims before the United States Patent and Trademark Office (PTO) should be precluded from arguing a broader construction for the purposes of infringement. * * * [W]henever a patentee utilizes the doctrine of equivalents in an infringement suit to extend the scope of his claims, he opens his case to rebuttal based on any statements he made on the record during prosecution." *Coleco Industries, Inc. v. U.S. International Trade Commission,* 65 C.C.P.A. 105, 573

F.2d 1247, 1257–58, 197 USPQ 472 (C.C.P.A. 1978, emphasis in original). *See also Autogiro Co. v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 400–01, 155 USPQ 697 (Ct.Cl. 1967); *Teledyne McCormick Selph v. United States,* 214 Ct.Cl. 672, 558 F.2d 1000, 1006–07, 195 USPQ 261 (Ct.Cl.1977). There is nothing to indicate that Caterpillar's argument to the PTO on the relative thinness of the hinge was unnecessary or superfluous.

Because claim 10, which does not call for the "thick-thin-thick" construction, was literally infringed, I join with the majority on that claim. The existence of claim 10, with its sharp contrast in wording to claims 1 and 19, means to me in the circumstances that the inventor intended those three claims to be interpreted literally. Accordingly, I would affirm as to claim 10 but reverse as to claims 1 and 19.

---

1. Note that the original claims had been rejected under § 102 (as well as § 112). *See supra.*